IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA

-vs-

CAUSE NO. A-05-CR-155-SS

JAVIER PEREZ

## ORDER

Before the Court are Defendant Javier Perez's Motion to Suppress [#9], the Government's response, filed September 15, 2005, and Defendant's Supplemental Motion to Suppress [#14]. On September 15, 2005, the Court held a hearing in this matter, and the parties appeared through counsel of record. After considering evidence presented at the hearing, the arguments of the parties, the relevant law, and the file as a whole, the Court made oral factual findings and denied Defendant's Motion to Suppress [#9] in open court on September 15, 2005 and now confirms the same.

I. Factual Background

On June 7, 2004, U.S. Magistrate Judge Robert Pitman issued a search warrant for the residence, business, outbuilding, and vehicles located at 7608 Scenic Brook Drive, Austin, Texas 78736 (7608 Scenic Brook Drive). The warrant issued based on the affidavit of Federal Bureau of Investigation (FBI) Special Agent Robert W. Britt, who sought to search the residence based on information officially supplied to him by Special Agent Ann M. Miller of the FBI's Buffalo, New York Division. Special Agent Miller had obtained incriminating evidence from Amanda Decker of Jamestown, New York, a witness who had been shown over the internet videos of children engaged in sexual acts by a person whose Yahoo username was "famcple."

An administrative subpoena was sent to Yahoo! Incorporated (Yahoo) on March 5, 2004, asking for any and all subscriber, account, and internet protocol (IP) history information for the Yahoo username "famcple." On March 18, 2004, Yahoo responded, providing the login name "stephanmee2003" for the account and the owner name as "Rob Ram" of Beverly Hills, CA.[1] However, the IP address information of "24.27.21.6" that Yahoo provided for the dates between February 18, 2004 and March 8, 2004 indicated that Time Warner Cable owned the IP address. In response to an administrative subpoena, Time Warner Cable provided the name Javier Perez, and the address 7608 Scenic Brook Drive, Austin, Texas 78736, as the owner of the Roadrunner account that corresponded to the IP address. The FBI later conducted a credit check through Choicepoint, a utilities company check, and an internet white pages check, all of which revealed that Javier Perez lived at 7608 Scenic Brook Drive, Austin, Texas 78736.

The search warrant was executed on June 9, 2004. Prior to and on June 9, 2004, the Defendant was living with two house mates, Edwin Lee Atterberry Jr. and Roberto (or Robert) Ramos, who rented rooms from him. When the officers arrived at 7608 Scenic Brook Drive with their search warrant, Mr. Atterberry answered the door. He told the officers that he lived there along with Perez and told them which bedroom belonged to Perez. The officers approached and knocked on Perez's bedroom door, which was locked. The officers report that after hearing movement in the bedroom without any opening of the door, they forced the door open and located Perez. Evidence consisting of approximately 3,999 compact discs (cds) containing approximately four million images of adult and child pornography was seized from Perez's bedroom and the garage. The officers

---

[1] The Government states in its response that it is not uncommon for collectors, purveyors and traders of child pornography to initiate Yahoo email accounts by providing false and/or fictitious names and information. Gov'ts Resp. at 1.

searched only Perez's bedroom and the common areas of the house for evidence; Atterberry's and Ramos's rooms were not searched.[2] After the officers located Perez, they questioned him in the kitchen, and he led them to at least two plastic tubs full of cds in the garage. There was no evidence presented in the motion or the hearing to challenge the voluntariness of Perez's statements to the officers on June 9, 2004.

At the hearing Special Agent Britt testified that prior to June 9, 2004, he had no knowledge or reason to believe that anyone else but Javier Perez lived at 7608 Scenic Brook Drive. Sergeant Jeffrey Eckert of the Texas Attorney General's office, who participated in executing the search warrant, also testified that he had never been to 7608 Scenic Brook Drive before June 9, 2004, and that it appeared to him to be a residential home in a residential neighborhood when he first saw it. Both the defense and the Government submitted photographs of the exterior and interior of the single-story residential house into evidence at the hearing. Def.'s Ex. 2–12, Gov'ts Ex. 1–9. Edwin Lee Atterberry, Jr. took the stand and testified that each of the three men living in the house had his own private bedroom with a lock on the outside of the door and that the men were unrelated adults whose bedrooms were for their own exclusive personal use.

## II. Discussion

Defendant files this motion to suppress, alleging his residence was searched without probable cause and without a valid warrant. In response, the Government contends the officers executing the warrant had probable cause to search the residence for evidence of sexual exploitation of minors, and that the search and seizure were within the constitutional boundaries of Fourth Amendment

---

[2] An FBI agent testified at the hearing that agents did enter the rooms of Ramos and Atterberry, but only as a protective sweep to determine that there were no other persons in the house. No evidence was taken from either of these rooms.

jurisprudence. Defendant attacks the search and seizure on two main grounds: (1) that a separate warrant should have been obtained before Defendant's bedroom was searched; and (2) that the affidavit which provided the basis for the warrant contained a false statement made with reckless disregard for the truth. The Court wholly rejects Defendant's motion. The facts of this case, based on the pleadings and the credible testimony of Special Agent Britt and Sergeant Jeffrey Eckert clearly show that the search was validly executed and was conducted pursuant to a valid search warrant that was based on an affidavit containing accurate information. Alternatively, the Court finds that any error in the execution of the warrant falls within the good faith exception.

### A. Probable Cause

First, the Court addresses the issue of probable cause. A valid search warrant may be issued only upon a finding of probable cause. The information necessary to show probable cause must be contained within a written affidavit given under oath. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). "It is clear that probable cause does not require proof beyond a reasonable doubt; 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* (*quoting Spinelli v. United States,* 393 U.S. 410, 419 (1969)). The issuing magistrate's determination is entitled to great deference by reviewing courts; the magistrate need only have "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.*

This Court finds that the affidavit of Special Agent Britt established probable cause to search 7608 Scenic Brook Drive. Britt based his affidavit testimony on accurate information he obtained from the Buffalo Division of the FBI, and, further, he confirmed that Perez resided at 7608 Scenic Brook Drive by doing utilities, credit, and internet searches before applying for the warrant. The information provided by Amanda Decker, Yahoo, and Time Warner, collectively resulted in the

-4-

probability that criminal activity was taking place at 7608 Scenic Brook Drive. This Court finds that the information contained in the affidavit provided the magistrate with a substantial basis for concluding that a search would uncover evidence of criminal activity.

### B. Multiple Occupancy Residence

Secondly, Defendant claims that the search was invalid because a second warrant should have been obtained to search Javier Perez's bedroom when the officers realized there were other unrelated adults living in the house with him. The U.S. Supreme Court applies an "objective reasonableness" standard to judge whether the location stated in a search warrant is overly broad. In *Maryland v. Garrison,* 480 U.S. 79 (1987), police officers obtained a search warrant for the entire third floor of a building, not knowing that there were actually two separate apartments on the third floor. The officers seized evidence from the "wrong" apartment before realizing their error; upon realizing, they immediately ceased their search and moved on to the targeted apartment. The Supreme Court held that where the officers' failure to realize the overbreadth of the warrant was objectively reasonable, no Fourth Amendment violation occurred so long as officers thereafter confined their search to the residence of the suspect. *Id.* at 86–88.

As their credible testimony at the hearing indicated, neither Britt nor Eckert knew that there were other residents of the house besides Perez before they arrived to execute the warrant. Because Special Agent Britt did not know there were separate living quarters within the house when he obtained the search warrant, his behavior in obtaining a warrant for the whole house was objectively reasonable and the execution of the warrant only in common areas and Mr. Perez's bedroom aligns exactly with the instructions of the Court in *Garrison.*

Defendant cites *United States v. Greathouse* in his motion for the proposition that a second search warrant should have been obtained to search Perez's bedroom. 297 F. Supp. 2d 1264 (D. Or. 2003). In *Greathouse*, another child pornography case involving computers, the Court stated as an alternative basis for suppressing the evidence seized that when the officers realized that there were nonfamilial people sharing a house and saw a Do Not Enter sign[3] on the defendant's door, they should have secured the area and obtained a telephonic warrant. *Id.* at 1274–75. However, the Court finds this case distinguishable on several bases. In *Greathouse*, it was a renter, not the owner of the house, whose bedroom was searched. Here, Perez was the owner of the house and the only person individually named by the FBI in their search warrant affidavit. Gov'ts Ex. 1 at 2. This Court reads *Greathouse* not as a bar to the search of Perez's room, but only as a possible bar to the search of Atterberry's or Ramos's room, which were never searched by officers executing this warrant. In addition, this issue was only stated as an alternate and not the primary basis for suppression.

Even if the defendant could prove that 7608 Scenic Brook Drive was a multiple-occupancy structure such that the warrant should have specified the particular subunit to be searched, the Court finds that this search falls within an exception to the specificity requirement. Where the building in question outwardly appears to be a single-occupancy structure and neither affiant nor the other investigating and executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way, the warrant is not defective for failure to specify a subunit within the named building. *United States*

---

[3] The Court notes that there was no such sign or indication not to enter on Perez's door. when the warrant was executed.

*v. Hinds*, 856 F.2d 438, 442 (1st Cir. 1988); *United States v. Maneti*, 781 F. Supp. 169, 179 (W.D.N.Y. 1991); *see also United States v. Davis*, 557 F.2d 1239, 1248 (8th Cir. 1977) (search warrant was held valid even though application stated a street address which turned out to include separate apartments, where officers had reason to believe it was a single family dwelling, and where, when officers conducting search discovered the separate occupancy of two apartments, they did not search those areas any further). Another case the Court finds persuasive is *United States v. Kyle*, in which a warrant authorizing the search of a residence was held to allow the search of a locked bedroom inside, despite Defendant's contention that the bedroom was a separate residence, where the room had neither its own access from outside, its own doorbell, nor its own mailbox. 40 F.3d 519, 524 (2d Cir. 1994).

Based on the officers' testimony and the photographs admitted as evidence at the hearing, the Court finds that the officers' conduct in executing the warrant was objectively reasonable under *Garrison*, and, alternatively, it falls under the exception stated above because 7608 Scenic Brook Drive outwardly appeared to be a single occupancy structure.

### C. Reckless Disregard for Truth in Search Warrant Affidavit

Next, Defendant alleges that the search warrant affidavit contained a false statement made with reckless disregard for the truth because the evidence contained in it did not indicate that there were multiple people living at 7608 Scenic Brook Drive. Defendant argues that surveillance, trash inspection, and Department of Public Safety record inquiries would have revealed that Javier Perez was not the only resident of 7608 Scenic Brook Drive.

Where a warrant affidavit contains a false statement made intentionally, knowingly, or with reckless disregard for the truth, the good faith exception to the exclusionary rule does not apply. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002). The initial burden is on the defendant to prove by a preponderance of the evidence that false information was given intentionally or recklessly. *Cavazos*, 288 F.3d at 710. If the defendant cannot meet this burden, or if the affidavit would have sufficiently provided probable cause without the false information, the warrant did not violate the Fourth Amendment and the evidence is admissible. *Id.* In this case, Defendant contends that the false statement contained in the affidavit was the absence of any indication that Javier Perez lived with two other men at 7608 Scenic Brook Drive. Defendant asserts that Special Agent Britt recklessly disregarded the truth by not undertaking additional surveillance and inquiries which would have informed him that others were living with Javier Perez at the time he applied for the search warrant. However, these arguments fail.

Special Agent Britt never made a false statement of any kind in the affidavit; he based his testimony on accurate information that he had obtained from the Buffalo, NY Division of the FBI and he even confirmed that Perez resided at 7608 Scenic Brook Drive by doing utilities, credit, and internet searches before applying for the warrant. Britt testified that he did not know that anyone else was living at the residence until after arriving to execute the warrant. Defendant has not proven by a preponderance of the evidence that any of the defendant's assertions in the affidavit were even untrue, let alone that Special Agent Britt recklessly disregarded the truth when making them. Assuming the affidavit contained an implicit representation that Javier Perez was the sole occupant of the residence, there was a substantial basis for such a conclusion at the

-8-

time it was executed. Therefore, the Court finds no merit in the defendant's argument that the warrant should be invalidated for containing a false statement made with reckless disregard for the truth.

### D. Description of Premises on Face of Search Warrant

Finally, Defendant complains that the search warrant omitted a description of the premises to be searched. Def's. Ex. 1. After closely examining the exhibit and its accompanying affidavit, the Court finds that the place to be searched was specifically indicated more than once. On the search warrant itself, although there is no description of the premises in the middle of the page following a checked box and "on the premises known as", one need only look a few lines above to the style of the case to see plainly stated "In the Matter of the Search of A residence, business, outbuildings, and motor vehicles on the curtilage located at: 7608 Scenic Brook Drive, Austin, Texas 78736." *Id.*

The Supreme Court has admonished that in construing search warrants there is no place for the "[t]echnical requirements of elaborate specificity once exacted under common law pleadings." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

Here, the correct address of the place to be searched can be found both on the face of the search warrant and in the accompanying affidavit. Although the Court finds no ambiguity on the face of this warrant, even if there was, the Fifth Circuit allows this Court to consider the accompanying affidavit to clarify an ambiguity on the face of the warrant. *United States v.*

*Haydel*, 649 F.2d 1152, 1157 (5th Cir. 1981). On page one of Britt's affidavit, the address "7608 Scenic Brook Drive, Austin, Texas 78736" is listed twice as the property to be searched. Gov'ts Ex. 11 at 2. Looking at both the face of the warrant and the accompanying affidavit, this Court finds no deficiency in the description of the place to be searched. The officers in this case indicated no difficulty in identifying 7608 Scenic Brook Drive as the place to be searched and they actually executed their search at exactly that address.

### E. Good Faith Exception

Although this Court has based its opinion on the underlying search to this point, in the alternative, the Court holds that the good faith exception also militates in favor of denying Defendant's motion to suppress. In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception to the exclusionary rule announced in *United States v. Leon,* without first addressing the underlying Fourth Amendment question. 468 U.S. 897, 924–25 (1984). Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith. *Id.* at 921–25.

Both Agent Britt and Sergeant Eckert testified that they had no knowledge nor reason to know that anyone else lived at 7608 Scenic Brook Drive besides the defendant until after they arrived to execute the warrant. When they discovered that others lived there, they refrained from searching the bedrooms of Atterberry and Ramos, even though their warrant authorized a search of the entire premises, and focused only on Javier Perez's bedroom and common areas. This

restraint itself convinces the Court that the officers executed the warrant in good faith and in an objectively reasonable manner. Defendant does not address the good faith exception in his motion and does not raise any persuasive reason why it should not apply on these facts.

Therefore, even if the Defendant could prevail on any of his claims that the warrant was improperly executed, the good-faith exception would validate the government's search and preserve the items seized as admissible evidence.

### III. Conclusion

Accordingly,

IT IS ORDERED Defendant Javier Perez's Motion to Suppress [#9] and Defendant's Supplemental Motion to Suppress [#14] are DENIED.

SIGNED this the 16th day of September 2005.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE