# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-50041

D.C. Docket No. 1:05-CR-155-ALL

**FILED**
JUN 0 8 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA

      Plaintiff - Appellee

    v.

JAVIER PEREZ

      Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, Austin.

Before KING, GARZA, and PRADO, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the sentence and conviction of the District Court are affirmed.

ISSUED AS MANDATE:  JUN 0 8 2007

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _Rhonda Parker_
Deputy

JUN 0 8 2007   New Orleans, Louisiana

United States Court of Appeals
Fifth Circuit
**FILED**
April 11, 2007
Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-50041

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JAVIER PEREZ,

        Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

    Defendant-Appellant Javier Perez ("Perez") was convicted of possession of child pornography and sentenced to fifty-seven months imprisonment. Perez appeals the district court's order denying his motion to suppress evidence acquired in a search of his premises on June 9, 2004. Perez also appeals the enhancement of his sentence based on his possession of images depicting prepubescent minors and images depicting sadistic/masochistic conduct. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2004, a woman in Jamestown, New York, complained to the police that she had received an internet message from someone with the Yahoo ID "famcple," who proceeded to show her images of young children engaged in sexual acts. This complaint was forwarded to the Buffalo, New York division of the Federal Bureau of Investigation ("FBI"). The FBI sent a subpoena to Yahoo! Incorporated ("Yahoo") seeking information regarding the user of Yahoo ID "famcple." Yahoo responded with information that the user's login name was "stephenmee2003," that the user's full name was "Mr. Rob Ram," and that on the dates when the child pornography was transmitted, the user had been using the IP address 24.27.21.6.

The FBI determined that the owner of the IP address 24.27.21.6 was Time Warner Cable ("Time Warner"). After being served with a subpoena, Time Warner informed the FBI that the IP address in question was assigned to Javier Perez, residing at 7608 Scenic Brook Drive, Austin, Texas 78736. The FBI performed a public records check, a utilities company check, and an internet white pages check, all of which indicated that there was a Javier Perez living at 7608 Scenic Brook Drive, Austin, Texas 78736. Special Agent Robert W. Britt ("Britt") of the FBI sought a warrant to search that address. On June 1, 2004, a United States Magistrate Judge issued a warrant authorizing the search of the

"residence, business, outbuildings, and motor vehicles on the curtilage located at: 7608 Scenic Brook Drive, Austin, TX 78736."

On June 9, 2004, Britt and other officers executed the search warrant. When the officers arrived at the front door of 7608 Scenic Brook Drive, they were met by Edwin Atterbury ("Atterbury"), who explained that he was a housemate of Perez and that a third person also resided in the house.[1] Britt proceeded with the search but confined it to Perez's room and the common areas of the house. After the officers searched Perez's room, in which they located compact discs containing child pornography, Perez, who was present during the search, directed the officers to storage bins in the garage, where more such compact discs were found. In total, approximately 4000 compact discs containing thousands of images of child pornography were seized by the officers.

A grand jury indictment returned on July 19, 2005, charged Perez with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Perez moved to suppress the evidence seized from his premises during the June 9, 2004 search. After a hearing on September 15, 2005, the district court denied Perez's motion. Perez then entered a conditional guilty plea, retaining his right to appeal the district court's ruling

---

[1] Britt testified that he left the house before discovering that the third housemate's name was Robert Ramos, suspiciously similar to the name provided by Yahoo, "Mr. Rob Ram."

3

on his motion to suppress. On December 9, 2005, the district court sentenced Perez to fifty-seven months in federal prison followed by seven years of supervised release. Perez now appeals.

## II. JURISDICTION

This is an appeal from a final judgment of a district court in a criminal case. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

### A. The district court did not err in denying Perez's motion to suppress

#### 1. Standard of Review

When reviewing the denial of a motion to suppress evidence, this court reviews the district court's factual findings for clear error and the district court's conclusions regarding the sufficiency of the warrant and the constitutionality of law enforcement action de novo. United States v. Cherna, 184 F.3d 403, 406 (5th Cir. 1999).

#### 2. Perez's Arguments

Perez argues that the district court should have granted his motion to suppress the evidence seized during the search of his premises on June 9, 2004. Perez first insists that there was insufficient probable cause to support the issuance of a search warrant. Perez alleges that "mere association between an IP address and a physical address is insufficient to establish probable cause." Even if the initial determination that probable

4

cause existed was reasonable, however, Perez argues that "[t]he discovery that multiple people resided at Perez's residence undermined the basis for the magistrate's probable-cause determination." Perez argues that the officers' discovery of Perez's housemates should have indicated to them that there was no longer probable cause to believe that Perez was the source of the unlawful transmissions. He further argues that the existence of these two housemates was material information that the officers had a duty to report to the issuing magistrate. Finally, Perez argues that the good-faith exception does not apply because the officers' reliance on the warrant was no longer objectively reasonable once they discovered that two other persons lived with Perez at 7608 Scenic Brook Drive.

   3.   Guiding Supreme Court Precedent

   Like this case, Maryland v. Garrison, 480 U.S. 79 (1987), involved the constitutionality of a search executed pursuant to a warrant authorizing the search of a structure that turned out to contain more individual residences than was believed at the time the warrant was issued. In Garrison, Baltimore police obtained a warrant to search the "third floor apartment" of 2036 Park Avenue. Id. at 80. When applying for the warrant and when executing it, police reasonably believed that the third floor of that address had only one apartment and that this apartment was occupied by the suspect McWebb. Id. at 81. In the course of their search, the police realized that the third floor actually

5

contained two apartments, and that they were in the process of searching the apartment of Garrison. Id. The officers ceased their search of Garrison's quarters, but the contraband they had discovered before doing so became the basis for Garrison's conviction. Id. at 80-81. The Supreme Court held that under the circumstances presented, the seizure of contraband from Garrison's apartment did not violate the Fourth Amendment. Id. at 88.

While the instant case is not identical to Garrison in all relevant particulars, Garrison does lay out a framework for how the analysis of this case should proceed. There, the Supreme Court stated that "[i]n our view, the case presents two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed." Id. at 84. Perez's appeal presents the same two overarching issues.

   4.   Validity of Warrant to Search 7608 Scenic Brook Drive

A valid search warrant may be issued only upon a finding of probable cause. United States v. Brown, 941 F.2d 1300, 1302 (5th Cir. 1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. Id. Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. A

magistrate's determination is entitled to deference by reviewing courts. Id.

In this case it is clear that there was a substantial basis to conclude that evidence of criminal activity would be found at 7608 Scenic Brook Drive. The affidavit presented to the magistrate included the information that the child pornography viewed by the witness in New York had been transmitted over the IP address 24.27.21.6, and that this IP address was assigned to Javier Perez, residing at 7608 Scenic Brook Drive, Austin, Texas 78736. Perez argues that the association of an IP address with a physical address does not give rise to probable cause to search that address. He argues that if he "used an unsecure wireless connection, then neighbors would have been able to easily use [Perez's] internet access to make the transmissions." But though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence. See United States v. Grant, 218 F.3d 72, 73 (1st Cir. 2000) (stating that "even discounting for the possibility that an individual other than [defendant] may have been using his account, there was a *fair probability* that [defendant] was the user and that evidence of the user's illegal activities would be

found in [defendant's] home") (emphasis in original).²
"[P]robable cause does not require proof beyond a reasonable doubt." <u>Brown</u>, 941 F.2d at 1302.

Perez also argues that evidence that illicit transmissions were made does not give rise to probable cause that physical evidence would be located at the residence. However, the New York witness stated that the images she observed appeared to be videos played on a television screen transmitted via a web cam. There was therefore a basis to believe that the suspect would have such videos in his residence. Moreover, Britt stated in his affidavit that, in his experience, persons interested in child pornography typically retain numerous images of child pornography as well as "material documenting the arrangements, the introduction, and tasks to consummate the acquisition of child pornography." Based on this information, there was probable cause to believe that physical evidence of violations of the child pornography laws would be located at 7608 Scenic Brook Drive.

The analysis is complicated, however, by the fact that 7608 Scenic Brook Drive has more than one occupancy unit.³ The Fourth Amendment requires that a warrant "particularly describ[e] the

---

² The evidence in <u>Grant</u> involved a screen name rather than an IP address, but the principle is equally applicable to the latter.

³ The government does not contest Perez's claim that he and his housemates each maintained a separate residence within 7608 Scenic Brook Drive.

place to be searched and the persons or things to be seized." Multiple circuit courts have held that to satisfy the particularity requirement when a search involves a building with multiple, separate residency units, the warrant must specify the precise unit that is the subject of the search. See United States v. White, 416 F.3d 634, 637 (7th Cir. 2005). "[W]hen a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit." United States v. Butler, 71 F.3d 243, 249 (7th Cir. 1995); see also United States v. Hinton, 219 F.2d 324, 325-26 (7th Cir. 1955) ("For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment."). Thus the general rule is that a warrant that authorizes the search of an undisclosed multi-unit dwelling is invalid. United States v. Gilman, 684 F.2d 616, 618 (9th Cir. 1982).

There are, of course, exceptions to this rule. The warrant of a multi-unit structure will be valid where (1) there is probable cause to search each unit;[4] (2) the targets of the

---

[4] While this has been stated by the Seventh and Ninth Circuits as an exception, it is perhaps better understood as an application of the general rule that probable cause must exist for each unit of a multi-unit structure.

investigation have access to the entire structure; or (3) the officers reasonably believed that the premises had only a single unit. United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994); Garrison, 480 U.S. at 85-86. Gilman, 684 F.2d at 618.[5] In assessing whether any of these exceptions can support the validity of the warrant, we must look to the information in possession of the police and magistrate at the time the warrant was issued. Garrison, 480 U.S. at 85 ("The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing Magistrate.").

In Garrison, the Supreme Court concluded that the warrant to search the third floor of 2036 Park Avenue was valid because the police reasonably believed that the third floor contained only one apartment when they applied for the warrant. Though the Court acknowledged that "[a]rguments can certainly be made that the police in this case should have been able to ascertain that there was more than one apartment on the third floor of this building," the Court noted that the police "made specific inquiries to determine the identity of the occupants of the third-floor

---

[5] There is also authority for the proposition that a warrant to search a multi-unit dwelling is valid if it specifies the name of the occupant of the apartment against which it is directed, despite the absence of any physical description of the particular apartment. United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975). In this case, however, the search warrant did not include Perez's name, so this exception is not applicable.

10

premises," including visiting the address and checking with the local gas and electric company and local police department. <u>Id.</u> at 86 n.10.

Though Perez contends that the police performed an insufficient investigation into the occupancy of 7608 Scenic Brook Drive before obtaining the warrant, the steps that the police took in this case are similar to those taken in <u>Garrison</u>. The officers performed a public records check, a utilities company check, and an internet white pages check, all indicating that 7608 Scenic Brook Drive was occupied by Perez and none indicating the presence of any other residents. We therefore conclude that the police officers reasonably believed that 7608 Scenic Brook Drive had only one resident at the time the warrant was issued. Accordingly, the warrant in this case was valid.

5.   <u>Reasonableness of Search of 7608 Scenic Brook Drive</u>

<u>Garrison</u> next counsels us to examine "whether the execution of the warrant violated [the defendant's] constitutional right to be secure in his home." 480 U.S. at 86. In that case, the Supreme Court concluded that the police did not violate Garrison's rights, because as soon they "discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously," they ceased to search that unit. <u>Id.</u> at 87. The Court wrote that "[i]f the officers had known, or should have known, that the

11

third floor contained two apartments before they entered the living quarters on the third floor, they would have been obligated to limit their search to McWebb's apartment." Id. at 86. In this case, the district court concluded and the government now maintains that Garrison squarely supports the officers' actions in executing their search of 7608 Scenic Brook Drive. When, upon arriving at the house, the officers learned that it contained three residences, the officers confined their search to areas used by Perez. This, the government argues, is exactly what Garrison prescribes.

As Perez points out, however, this case is not precisely like Garrison. In this case, the discovery of additional residents of 7608 Scenic Brook Drive also altered the calculation of probable cause against Perez. The discovery of the two other housemates should have alerted the police to the possibility that one of the other housemates might have been using the IP address in question at the time of the illicit transmissions. The existence of wires traveling into each of the bedrooms added support to that possibility. Indeed, once the officers learned of the additional residents, the situation resembled one that Garrison explicitly declined to address:

> We expressly distinguish the facts of this case from a situation in which the police know there are two apartments on a certain floor of a building, and have probable cause to believe that drugs are being sold out of that floor, but do not know in which of the two apartments the illegal transactions are taking place. A search

12

> pursuant to a warrant authorizing a search of the entire floor under those circumstances would present quite different issues from the ones before us in this case.

480 U.S. at 89 n.13. Here, the officers faced a situation in which they knew that 7608 Scenic Brook Drive contained three residences, and had probable cause to believe that unlawful transmissions were made from one of the residences, but did not know which residence. <u>Garrison</u> does not assist us in resolving this problem.

Perez maintains that when the officers acquired information that altered the probable cause determination, they had a duty to present this information to the magistrate. Because they did not do so, he claims, their search of his premises was unreasonable. There are no Fifth Circuit decisions that directly address this issue. Perez relies on <u>United States v. Marin-Buitrago</u>, 734 F.2d 889, 894 (2d Cir. 1984), where the Second Circuit declared that "when a definite and material change has occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Therefore, the magistrate must be made aware of any material new or correcting information."

When this decision is read in full, however, it becomes clear that <u>Marin-Buitrago</u> does not support Perez's position that the evidence from his residence must be suppressed. Therein, the

13

Second Circuit indicated that the evidence resulting from the search should be suppressed only when the new information brought the level of probability below what was necessary for probable cause. Thus the court stated that "[i]n determining on this appeal whether the affidavit still supports a finding of probable cause after the inclusion of [the new information], we must assume the role of the issuing magistrate." Id. at 895. After concluding that "[e]ven with the supplemental information, the affidavit clearly establishes, by a fair probability," that the search would produce evidence of narcotics, and that therefore "the warrant for the search . . . was supported by probable cause at the time it was executed," the court upheld the district court's denial of the defendant's motion to suppress. Id. at 896.

The Sixth Circuit has reached the same result through slightly different reasoning. In United States v. Bowling, 900 F.2d 926, 933 (6th Cir. 1990), the Sixth Circuit commented that:

> The Supreme Court has emphatically cautioned that in the absence of urgent circumstances officers should not rely on their own discretion, but should instead resort to a neutral magistrate, to determine whether probable cause to conduct a search exists. See Johnson v. United States, 333 U.S. 10, 14 (1948) . . . . Although Johnson's admonition speaks specifically to the situation in which officers conduct a warrantless search, we think it is equally applicable to cases in which officers possess a warrant but are alerted to circumstances which affect the probable cause for its execution.

Addressing the case before it, the Sixth Circuit stated that "[b]ecause no exigent circumstances are presented by the facts of

14

this case, the officers should have refrained from the second search until a neutral magistrate determined that probable cause continued to exist." Id. However, the court went on to declare, citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978), that "[n]otwithstanding the officers' failure to [return to the magistrate], the fruits of the second search are not to be suppressed if this court finds that a neutral magistrate would have determined that probable cause existed." Id. Concluding that a neutral magistrate apprised of the new information would still have found that probable cause existed, the court declined to suppress the fruits of the search. Id. at 934.

In the instant case, the new information acquired by the police was that Perez's house contained two other residences in addition to his own. Because the IP address in question was registered in Perez's name, and because the two other individuals living in Perez's house maintained separate residences, there was still a fair probability that Perez was the party responsible for the illegal transmissions. This court has held that "the requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999) (citing United States v. Antone, 753 F.2d 1301, 1304 (5th Cir. 1985)); see also Texas v. Brown, 460 U.S. 730, 742 (1983) (stating that probable cause "does not demand any showing that such a belief be correct or more likely true than false"). Accordingly, we find

15

that even in light of the new information regarding Perez's housemates, probable cause still existed for the search of Perez's premises. As a result, the district court did not err by refusing to suppress the fruits of the officers' search of Perez's premises.

**B.   The district court did not err in enhancing Perez's sentence based on his possession of images depicting prepubescent minors and images depicting sadistic/masochistic conduct**

   1.   Standard of Review

Perez objected at trial to the enhancement of his sentence for possession of images depicting prepubescent children and images depicting sadistic or masochistic conduct. The nature of his objection was that because he had not been indicted for or pled guilty to possessing these materials, any increase in offense level on this basis would be a violation of his Sixth Amendment rights. At Perez's sentencing hearing, his lawyer characterized these objections as "Booker objections." On appeal, however, Perez objects to these sentencing enhancements on the basis that there is insufficient proof that he intended to possess materials of this nature.

Because Perez did not argue before the district court the specific objection that he now raises, we analyze his claim under the plain error framework set out by the Supreme Court in United States v. Olano, 507 U.S. 725 (1993). Under plain error review, we may overturn a district court decision only if there is (1) error, (2) that is plain, and (3) that affects substantial

16

rights. United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005) (quoting United States v. Cotton, 535 U.S. 625, 631 (2002)). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

 2. Applying Plain Error Review

 Relying on United States v. Kimbrough, 69 F.3d 723 (5th Cir. 1995), Perez argues that the Fifth Circuit requires that the government prove intent to possess images depicting prepubescent children or sadistic/masochistic conduct to obtain sentencing enhancements under U.S.S.G. §§ 2G2.2(b)(1) and 2G2.2(b)(3). Addressing sentencing enhancements under these provisions, the Kimbrough court stated that "the trial court heard sufficient evidence . . . to conclude that Kimbrough intentionally ordered and possessed child pornography which depicted prepubescent minors or minors under the age of 12, or, at the very least, had reckless disregard of the age of the performers" and that "the trial court heard sufficient evidence at trial to conclude that Kimbrough intentionally ordered and possessed pornography which depicted sadistic or masochistic conduct." 69 F.3d at 734. We can conclude from these quotations that this circuit requires a showing of either reckless disregard or intent for sentencing enhancements under U.S.S.G. §§ 2G2.2(b)(1) and 2G2.2(b)(3).

 Perez argues that language used by the district court

17

indicated that the court "used a strict liability theory in assessing whether the enhancement provisions applied to Perez." The language used by the district court in discussing these enhancements at Perez's sentencing hearing is ambiguous. But even if the district court did commit error, this error did not affect Perez's substantial rights, for there is sufficient evidence to support the enhancements under the correct standard.

Perez admitted that he possessed and "collected" child pornography. He was able to direct the officers searching his home to compact discs that contained child pornography. At least one such compact disc had file folders labeled "kiddie porn." The Attorney General's office reviewed only a portion of the approximately 4000 compact discs seized from Perez, and still found an estimated 2500 images of child pornography. Numerous of these images involved either prepubescent children or sadistic/masochistic conduct. While Perez claims that he did not look at most of the child pornography files he downloaded, he admits having seen some of them. Moreover, the downloaded files often had file names that summarized their images, implying that Perez could have been aware of the contents even without viewing each image. Accordingly, there is sufficient evidence in the record to demonstrate that Perez either intended to possess prepubescent and sadistic/masochistic images or had reckless disregard for his possession of them. We therefore affirm the district court's enhancement of Perez's sentence.

## IV. CONCLUSION

For the reasons stated above, we affirm Perez's conviction and sentence.

AFFIRMED.